## IN THE UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HI-TECH PHARMACEUTICALS, INC.; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| USA NUTRACEUTICALS GROUP, | ) | |
| INC.; ULTRA-LAB NUTRITION, INC. | ) | |
| d/b/a BEAST SPORTS NUTRITION; | ) | **JURY TRIAL DEMANDED** |
| JOHN DOE ENTITIES 1-10; and | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, Plaintiff Hi-Tech Pharmaceuticals, Inc., ("Hi-Tech"), by and through the undersigned counsel of record, and for its Complaint against Defendants USA Nutraceuticals Group, Inc. ("USA Nutraceuticals"); Ultra-Lab Nutrition, Inc. d/b/a Beast Sports ("Ultra-Lab"); John Doe Entities 1-10; and John Does 1-10 ("Defendants" collectively) states as follows:

### THE PARTIES

1.      Hi-Tech is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 6015-B Unity Drive, Norcross, Georgia 30071. Hi-Tech sells, distributes, and manufactures high quality

dietary supplement products in the State of Georgia, including within this District, and throughout the United States.

2. USA Nutraceuticals is a corporation organized under the laws of Florida, and can be served with process upon its Registered Agent, Anthony Altieri, at 7491 North Federal Highway, # C5-148, Boca Raton, Florida 33487. Upon information and belief, USA Nutraceuticals sells, distributes, and/or markets its products, including the product at issue, in the State of Georgia, in this District, and throughout the United States

3. Ultra-Lab is a corporation organized under the laws of Florida, and can be served with process upon its Registered Agent, Anthony Altieri, at 7491 North Federal Highway, # C5-148, Boca Raton, Florida 33487. Upon information and belief, Ultra-Lab sells, distributes, and/or markets its products, including the product at issue, in the State of Georgia, in this District, and throughout the United States.

4. John Doe Entities 1-10 are corporations or other legal entities, the names and addresses of which are currently unknown.

5. John Does 1-10 are individuals whose names and addresses are unknown.

6. Upon information and belief, discovery and investigation into Hi-Tech's causes of action set forth herein will reveal the involvement and liability of

at least one individual and perhaps more as set forth herein.  In the event such John Does and/or John Doe Entities are identified, Hi-Tech will amend its Complaint in accordance with applicable laws and rules in order to name such defendants.

## JURISDICTION AND VENUE

7.     This is an action under the Lanham Act, 15 U.S.C. § 1051, *et. seq*., the Georgia Deceptive and Unfair Trade Practices Act, O.C.G.A. §10-1-372 (a), and Georgia's Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-4, for relief from Defendants' false advertising, deceptive acts, and unfair competition arising out of Defendants' use of false or misleading descriptions and/or false or misleading representations of fact.  Hi-Tech brings this action to enjoin Defendants from continuing to falsely advertise their products, and to recover from the competitive injury that Defendants' false advertising and unfair competition have caused to Hi-Tech's business.

8.     Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C § 1331 (federal question).

9.     This Court also has jurisdiction pursuant to 28 U.S.C § 1367 (supplemental jurisdiction).

10.    This Court has personal jurisdiction over Defendants.  For example, this Court may exercise personal jurisdiction over the Defendants pursuant to O.C.G.A.

§ 9-10-91 because the Defendants are doing business in this judicial district and/or has committed tortious acts within this judicial district including false advertising and unfair competition among other wrongful and unlawful acts.

11.    By way of further example and without limitation, Defendants have purposefully and voluntarily placed the product described herein into the stream of commerce with the knowledge, understanding, and expectation that such products would be and are purchased in the Northern District of Georgia.

12.    Upon information and belief, and based upon internet purchase made by Hi-Tech in the Northern District of Georgia, the products described herein are, and have been, available for purchase in the Northern District of Georgia.

13.    Moreover, the causes of action in this Complaint arise from and are connected to Defendants' transaction of business in this State, and the exercise of jurisdiction by the courts of this State over Defendants does not offend traditional fairness and substantial justice.

14.    Defendants have committed the torts of false advertising and unfair competition within the State of Georgia, and more particularly, within the Northern District of Georgia, in that Defendants have caused the product described herein to be formulated made, manufactured, shipped, distributed, advertised, offered for sale and/or sold in this District, and continue to do so.

15.    This Court, therefore, has jurisdiction over the Defendants pursuant to the provisions of the Georgia long-arm statute.

16.    Venue is proper under 28 U.S.C. §§ 1391 and 1400 in that the Defendants are doing and transacting business within this judicial district, and have committed the tortious acts complained of herein in this judicial district.

## I.    HI-TECH AND ITS PRODUCTS

17.    Hi-Tech is a producer of high quality dietary supplements, including numerous products designed for muscle and body building, such as testosterone boosters and muscle-gainers.

18.    Examples of Hi-Tech's muscle and body building dietary supplements include Dianabol®, Anavar®, Bulasterone®, Phosphagen, NitroPro®, and Somatomax®.

19.    Hi-Tech also sells various other muscle and body building dietary supplements, including several sold and marketed under brands purchased by Hi-Tech.

20.    Hi-Tech distributes, markets and sells its muscle and body building dietary supplements in the State of Georgia and throughout the United States via an extensive network of wholesale, Internet, and retail outlets such as health food stores, gyms and fitness centers.

21.     For instance, Hi-Tech's muscle and body building dietary supplements are sold by way of various online dietary supplement retailers such as EliteNutrition.com, TigerFitness.com, ThriftySupps.com, A1Supplements.com, MassNutrition.com, Supplement Central.com, NutritionJungle.com, and many others.

22.     Consumers in the Northern District of Georgia and across the United States can view, and upon information and belief, have viewed and purchased Hi-Tech's products by way of these internet retail stores.

## II.     DEFENDANTS AND THEIR BEAST ANABOLIC ACTIVATOR PRODUCT

23.     Similar to Hi-Tech, Defendants also sell various dietary supplement products.

24.     Defendants sell their dietary supplement products directly to consumers by way of the website BeastSports.com which, upon information and belief, they own and operate.

25.     One of Defendants' products, which they do not advertise or sell on their website, is "The BEAST Anabolic Activator" (the "Beast product").

26.      Interestingly, Defendants do not advertise or sell the Beast product on their website despite the fact that the Beast product is touted as being their "#1 selling product" for the last 20 years.  *See, e.g.,* Exhibit A.

6

### A. The Beast Product Constitutes an Illegal Drug, Which Defendants Falsely and Misleadingly Advertise as a Lawful Dietary Supplement.

27.    By way of the label on the Beast product and several website advertisements, Defendants represent that the Beast product contains various ingredients including, but not limited to, "Chorionic Gonadotrophine." *See, e.g.,* Exhibit B.

28.    Chorionic Gonadotrophine is more commonly known as "Human Chorionic Gonadotrophine" or "HCG."

29.    HCG is a "drug" under the Food, Drug, and Cosmetic Act ("FDCA") and only legally available by prescription.

30.    The FDA has also been explicit in that products bearing unsubstantiated claims that they affect body mass, which also claim to include homeopathic HCG, are illegal and misbranded "drugs" under the law.

31.    Thus, because Defendants' Beast product is advertised with unsubstantiated claims that it affects body mass (as set forth more fully herein), and claims that the product includes homeopathic HCG, the Beast product is an illegal "drug" under the law.

32.    "Dietary supplements," however, are deemed to be "foods" within the meaning of the FDCA.  21 U.S.C. § 321(ff)(3)(2).

7

33.    The FDCA regulates "foods" and "drugs" differently.

34.    Because Defendants' Beast product is a "drug," it is not a "food" or "dietary supplement" under the law.

35.    Defendants, however, misleadingly market and sell their Beast product as though it were a lawful dietary supplement by marketing and selling the Human Growth Complex product through dietary supplement retailers, many or most of which also sell Hi-Tech's muscle and body building products.

36.    For example, Defendants sell the Beast product via the following dietary supplement websites, which also sell Hi-Tech muscle and body building products:     EliteNutrition.com,     TigerFitness.com,     ThriftySupps.com, A1Supplements.com,     MassNutrition.com,     SupplementCentral.com, NutritionJungle.com.   These websites contain advertisements and descriptions submitted to the online retailers from Defendants.

37.    Upon information and belief, Defendants also sell their Beast product through various other dietary supplement retailers, by this it is meant that combined brick and mortar as well as internet sales, which carry Hi-Tech muscle and body building products, as well as dietary supplement retailers which do not carry Hi-Tech muscle and body building products.

38.     Consumers are able to purchase Defendants' Human Growth Complex at these dietary supplement retailers without a prescription.

39.     By marketing and offering the Beast product for sale alongside various other dietary supplements through dietary supplement retailers, Defendants are intentionally misleading the public into believing that the Beast product is a lawful dietary supplement and not a prescription-only drug.

40.     Consumers across the United States and in the Northern District of Georgia can view, and upon information and belief, have viewed Defendants' internet advertisements and product labels by way of these internet retail stores, and have purchased the Beast product by way of these internet retail stores and, in doing so, relied upon Defendants' representation that the Beast product is a lawful dietary supplement.

41.     By marketing and offering the Beast product for sale alongside various other dietary supplements through dietary supplement retailers, the Beast product is in direct competition with legitimate dietary supplement products, including those of Hi-Tech.

42.     Upon information and belief, Defendants' representations set forth herein have caused consumers to purchase Defendants' Beast product instead of Hi-

Tech's muscle and strength building products, thereby diverting sales and profits from Hi-Tech.

**B. Defendants Falsely and Misleadingly Advertise the Beast Product as "Homeopathic."**

43.     Defendants' product label on the Beast product represents that the products' ingredients are all homeopathic.  *See, e.g.,* Exhibit B.

44.     Defendants further represent on their website advertisements that the Beast product contains "Homeopathic … Chorionic Gonadotrophine."  *See, e.g., Id*.

45.     Defendants' website advertisements further state that the Beast product contains "actual homeopathic hormones."  *See, e.g.,* Exhibit A.

46.     Substances that can be legally marketed as homeopathic drugs are listed in the official Homeopathic Pharmacopeia of the United States ("HPUS"), its addenda, or supplements.   *See* 21 U.S.C. § 321(g)(1); FDA Compliance Policy Guide 7132.15(2).

47.     The list of homeopathic drugs in the HPUS does not contain Chorionic Gonadotrophine or Human Chorionic Gonadotrophine ("HCG").

48.      Thus, Defendants' label and website advertisements representing that the Beast is a homeopathic product, and touting the Beast product as containing "homeopathic" HCG, are false and misleading because there is no such thing as a "homeopathic" HCG drug under the law.

10

49.    Moreover, according to the FDA, drug products containing homeopathic ingredients in combination with non-homeopathic active ingredients are not homeopathic drug products.

50.    Thus, because the HGC ingredient is not "homeopathic," the Beast product cannot be considered "homeopathic" even if it contains other ingredients that are homeopathic.

51.    As a result, Defendants' aforementioned representations that the Beast product is a homeopathic product containing homeopathic hormones and homeopathic HCG are false and misleading.

52.    By marketing and offering the Beast product using these misrepresentations, Defendants are intentionally misleading the public into believing that the Beast product is a homeopathic product with all or largely all homeopathic ingredients, including homeopathic HCG.

53.    Consumers across the United States and in the Northern District of Georgia can view, and upon information and belief, have viewed Defendants' product label and internet advertisements by way of these internet retail stores, and have purchased the Beast product by way of these internet retail stores and, in doing so, relied upon these representations.

54.    Upon information and belief, Defendants' representations set forth herein have caused consumers to purchase Defendants' Beast product instead of Hi-Tech's muscle and strength building products, thereby diverting sales and profits from Hi-Tech.

## C. Defendants Falsely and Misleadingly Advertise the Beast Product as One Which Increases Muscle and Body Mass.

55.    Defendants also market and sell the Beast product as one which increases muscle and body mass.

56.    For instance, Defendants market and sell the Beast product "Muscle Builder" category of products on various retail websites.  *See, e.g.,* Exhibit A.

57.    Defendants' website advertisements for the Beast product also state that "[t]housands of body builders and athletes worldwide have used the formula as a safe and effective alternative to illegal anabolics [*i.e.* muscle and strength building anabolic steroids available only by prescription]."  *See, e.g., Id.*

58.    Defendants' website advertisements for the Beast product further state that the Beast product "safely supports increases in muscle [or mass] and strength." *See, e.g., Id.*

59.    These claims, however, are false and misleading because the Beast product contains only highly diluted ingredients wholly incapable of increasing muscle and body mass.

12

60.    For  instance,  as  reflected  on  Defendants'  label  and  website advertisements, the amount of each ingredient per serving is listed as being a figure such as "6 C" or "9 C."  *See, e.g.,* Exhibit B.

61.    These figures with a subsequent "C" represent homeopathic dilution rates,  or  the  rate  at  which  the  listed  ingredient  is  diluted.   On  the  "C scale," a substance is diluted by a factor of 100 at each stage.

62.    For instance, Chorionic Gonadotrophine, is listed as being present at "6 C" per serving.

63.    This  means  that  this  ingredient  is  present  at  the  rate  of  one  part Chorionic Gonadotrophine to one trillion (1,000,000,000) parts dilutant (*i.e.* $1:100^6$).

64.    To  put  this  dilution  rate  in  perspective,  the  FDA's  allowed  level  of arsenic in bottled water exceeds the dilution rate of the Chorionic Gonadotrophine in Defendants' Beast product.  *See* 21 CFR 165.110(b)(4)(iii)(A).

65.    Defendants, therefore, have all but diluted the ingredients of the Beast product, which is why the Beast product is "totally safe for all drug testing" as advertised.  *See, e.g.,* Exhibit A.

66.    Given the dilution rate of the ingredients in Defendants' Beast product, it is impossible for the Beast product to provide for the muscle and strength gains advertised by Defendants.  In this regard, the Beast product is a highly diluted drug

which constitutes a placebo and, not only has Hi-Tech lost sales, but the consuming public is being defrauded.

67.     Thus, Defendants' aforementioned representations that consumption of the Beast product will result in muscle building and increased muscle and strength, and the aforementioned representation that the Beast product is an effective alternative to anabolic steroids are false and misleading.

68.     By marketing and offering the Beast product using these misrepresentations, Defendants are intentionally misleading the public into believing that the Beast product can and will provide consumers with increases in muscle and strength and not what is, in effect, a placebo.

69.     Consumers across the United States and in the Northern District of Georgia can view, and upon information and belief, have viewed Defendants' internet advertisements by way of these internet retail stores, and have purchased the Beast product by way of these internet retail stores and, in doing so, relied upon these representations.

70.     Upon information and belief, Defendants' representations set forth herein have caused consumers to purchase Defendants' Beast product instead of Hi-Tech's muscle and strength building products, thereby diverting sales and profits from Hi-Tech.

### III.   DEFENDANTS' HUMAN GROWTH COMPLEX PRODCUT

71.   Another product marketed and sold by Defendants, which is also not on their BeastSports.com website, is their Human Growth Complex product.

### A.   The Human Growth Product Constitutes an Illegal Drug Which Defendants Falsely and Misleadingly Advertise as a Lawful Dietary Supplement.

72.   By way of the label on the Human Growth Complex product and several website advertisements, Defendants represent that the Human Growth Complex product contains various ingredients including, but not limited to, "Insulin-Like Growth Factor (IGF-1)."  *See, e.g.,* Exhibit C.

73.   Insulin-Like Growth Factor ("IGF-1") is a drug under the FDCA and only legally available by prescription.

74.   Thus, Defendants' Human Growth Complex product is a "drug," not a "food" or "dietary supplement" under the law.

75.   Defendants, however, misleadingly market and sell their Human Growth Complex product as though it were a dietary supplement by marketing and selling the Human Growth Complex product through dietary supplement retailers, many or most of which also sell Hi-Tech's muscle and body building products.

76.   For example, Defendants sell the Human Growth Complex product via the following dietary supplement websites, which also sell Hi-Tech muscle and body

building products: A1Supplements.com, MassNutrition.com, FitnessFirstUSA.com, TigerFitness.com, and EVitamins.com.  These websites contain advertisements and descriptions submitted to the online retailers from Defendants.

77.    Upon information and belief, Defendants also sell their Human Growth Complex product through various other dietary supplement retailers, by this it is meant that combined brick and mortar as well as internet sales, which carry Hi-Tech muscle and body building products, as well as dietary supplement retailers which do not carry Hi-Tech muscle and body building products.

78.    Consumers are able to purchase Defendants' Human Growth Complex at these dietary supplement retailers without a prescription.

79.    Consumers across the United States and in the Northern District of Georgia can view, and upon information and belief, have viewed Defendants' internet advertisements and product labels by way of these internet retail stores, and have purchased the Human Growth Complex product by way of these internet retail stores and, in doing so, relied upon Defendants' representation that the Human Growth Complex is a lawful dietary supplement.

80.    By marketing and offering the Human Growth Complex product for sale alongside various other dietary supplements through dietary supplement

retailers, Defendants are intentionally misleading the public into believing that the Human Growth Complex product is a dietary supplement and not a drug.

81.   By marketing and offering the Human Growth Complex product for sale alongside various other dietary supplements through dietary supplement retailers, the Human Growth Complex product is in direct competition with legitimate dietary supplement products, including those of Hi-Tech.

82.   Upon information and belief, Defendants' representations set forth herein have caused consumers to purchase Defendants' Human Growth Complex instead of Hi-Tech's muscle and strength building products, thereby diverting sales and profits from Hi-Tech.

B. **Defendants Falsely and Misleadingly Advertise the Human Growth Complex Product as "Homeopathic."**

83.   Defendants' website advertisements falsely and misleadingly represent that the Human Growth Complex Product is "homeopathic."

84.   For instance, Defendants' website advertisements state that:

The science of homeopathic medicine (homeopathy) has existed even longer than our current form of medicine known as "western medicine". Homeopathy is popularly practiced in Australia, Mexico, Europe, India, and South America. For political reasons, homeopathy is not as widely practiced in the United States since homeopathic medications cannot be patented. However, homeopathy's popularity is growing rapidly here because of the safety and effectiveness of the medications and due to the rising cost of healthcare.

> Ultra Lab Nutrition, specializing in the most powerful legal sports nutrition supplements on the market, presents its newest anabolic... Human Growth ComplexTM... a powerful compound specifically formulated to accelerate muscle growth and recovery through Homeopathic means. This product is manufactured under the stringent guidelines of the Homeopathic Pharmacopoeia of the United States (H.P.U.S.)
>
> The homeopathic medications in Human Growth Complex work in synergy to accelerate muscle growth and recovery without the adverse side effects normally attributed to illegal anabolics.

*See, e.g.,* Exh. C.

85.    Defendants' Human Growth Complex is also sold in a box referring to the product's "Homeopathic Formula."  *See, e.g., Id.*

86.    Defendants' website advertisements, however, refer to "homeopathic IGF-1."  *See, e.g., Id.*, p. 6.

87.    However, substances that can be legally marketed as homeopathic drugs are listed in the official Homeopathic Pharmacopeia of the United States ("HPUS"), its addenda, or supplements.  *See* 21 U.S.C. § 321(g)(1); FDA Compliance Policy Guide 7132.15(2).

88.    The list of homeopathic drugs in the HPUS does not contain Insulin-Like Growth Factor, IGF-1.

89.    According to the FDA, drug products containing homeopathic ingredients in combination with non-homeopathic active ingredients are not homeopathic drug products.

90.    Thus, because the IGF-1 ingredient is not "homeopathic," the Human Growth Complex product cannot be considered "homeopathic" even if it contains other ingredients that are homeopathic.

91.    In making the aforementioned representations, Defendants are intentionally misleading the public into believing that the Human Growth Complex product is a homeopathic product with all homeopathic ingredients.

92.    Consumers across the United States and in the Northern District of Georgia can view, and upon information and belief, have viewed Defendants' internet advertisements and product labels by way of these internet retail stores, and have purchased the Human Growth Complex product by way of these internet retail stores and, in doing so, relied upon Defendants' representation that the Human Growth Complex product is a homeopathic product with all or largely all homeopathic ingredients.

93.    Upon information and belief, Defendants' representations set forth herein have caused consumers to purchase Defendants' Human Growth Complex

instead of Hi-Tech's muscle and strength building products, thereby diverting sales and profits from Hi-Tech.

**C. <u>Defendants Falsely and Misleadingly Advertise the Human Growth Complex Product as One Which Increases Muscle and Strength.</u>**

94.     Defendants' website advertisements represent that the Human Growth Complex product is "specifically formulated to accelerate muscle growth and recovery." *See, e.g.,* Exhibit C.

95.     Defendants' website advertisements further represent that the ingredients in the Human Growth Complex product "work in synergy to accelerate muscle growth and recovery without the adverse side effects normally attributed to illegal anabolics." *See, e.g., Id*.

96.     Defendants' website advertisements go on to state that:

Faster muscle recovery means faster, easier muscle growth. For those individuals who have difficulty in gaining weight, Human Growth Complex stimulates appetite and aids the body in nutrient absorption. Of special interest to strength athletes is the fact that Human Growth Complex dramatically strengthens connective tissue including ligaments and tendons. Stronger connective tissue leads to immediate strength increases.

*See, e.g., Id*.

97.     Defendants' also falsely and misleadingly sell their Human Growth Complex product in the "Muscle Builder" category of products on the websites of various dietary supplement retailers. *See, e.g., Id*., p. 1.

98.    These claims and representations, however, are false and misleading because the Human Growth Complex product contains only highly diluted ingredients wholly incapable of increasing muscle mass and strength.

99.    For instance, as reflected on Defendants' label and website advertisements, the amount of each ingredient per serving is listed as being a figure such as "12 X" or "15 X." *See, e.g.,* Exhibit D.

100.   These figures with a subsequent "X" represent homeopathic dilution rates, or the rate at which the listed ingredient is diluted. On the "X scale," a substance is diluted by a factor of 10 at each stage.

101.   For instance, IGF-1 is listed as being present at "12 X" per serving.

102.   This means that this ingredient is present at the rate of one part IGF-1 to one trillion (1,000,000,000) parts dilutant (*i.e.* $1:10^{12}$).

103.   To put this dilution rate in perspective, the FDA's allowed level of arsenic in bottled water exceeds the dilution rate of IGF-1 in Defendants' Human Growth Complex product.  *See* 21 CFR 165.110(b)(4)(iii)(A).

104.   Given the dilution rate of the ingredients in Defendants' Human Growth Complex product, it is impossible for the product to provide for the muscle and strength gains advertised by Defendants.  In this regard, the Human Growth Complex product is a highly diluted drug which constitutes a placebo and, not only

has Hi-Tech lost sales, but the consuming public is being defrauded.  the consuming public is being defrauded.

105.   Thus, Defendants' aforementioned representations that consumption of the Human Growth Complex product will result in weight gain, muscle building, muscle growth and recovery, increased nutrient absorption, strengthened tissues, and increased strength are false and misleading.

106.  In  making  the  aforementioned  representations,  Defendants  are intentionally misleading the public into believing that they are purchasing a product the use of which will result in these physical benefits and not what is, in effect, a placebo.

107.   Consumers across the United States and in the Northern District of Georgia  can  view,  and  upon  information  and  belief,  have  viewed  Defendants' internet advertisements by way of these internet retail stores, and have purchased the Human Growth Complex product by way of these internet retail stores and, in doing so, relied upon Defendants' representations that use of the Human Growth Complex product  will  result  in  weight  gain,  muscle  building,  muscle  growth  and  recovery, increased nutrient absorption, strengthened tissues, and increased strength.

108.   Upon information and belief, Defendants' representations set forth herein have caused consumers to purchase Defendants' Human Growth Complex

instead of Hi-Tech's muscle and strength building products, thereby diverting sales and profits from Hi-Tech.

## COUNT I

### FALSE ADVERTISING OF THE BEAST PRODUCT IN VIOLATION OF SECTION 43(A)(1)(B) OF THE LANHAM ACT

109.   Hi-Tech incorporates Paragraphs 1 though 70 as if fully set forth herein.

110.   As set forth herein, Defendants, who purport to sell "dietary supplements," have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of their Beast product by falsely and misleadingly representing that the Beast product is a legal, homeopathic dietary supplement, the consumption of which leads to changes in body mass and strength. Defendants also falsely and misleadingly fail to disclose that the Beast product is not legal, not homeopathic, and that is not a dietary supplement despite its marketing and sale though dietary supplement retailers.

111.   Defendants' marketing of such misbranded and falsely-labeled substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics than it has. More specifically, Defendants' marketing and sale of the Beast product has the tendency to deceive a substantial portion of the population into believing that they are purchasing a legal, homeopathic dietary supplement, the consumption of which

leads to changes in body mass and strength, as opposed to an illegal, non-homeopathic drug, the consumption of which could not affect body mass and strength.

112.   The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer has concerns about the consequences of ingesting illegal, non-homeopathic, un-FDA approved, prescription-only drugs.

113.   Defendants have introduced their false and misleading statements and representations into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce.  The Defendants' product also bears a label containing the false statement that the Beast product contains homeopathic Chorionic Gonadotrophine, rendering the Beast product misbranded under the law.

114.   Defendants' actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of the products in violation of Section 43(a)(1)(B) of the Lanham Act.

115.   Hi-Tech's muscle and body building products are legitimate dietary supplements, which compete directly with Defendants' Beast product.

116.   As a result of Defendants' misrepresentations, Hi-Tech has suffered an ascertainable economic loss of money by the diversion of business from Hi-Tech to Defendants.

## COUNT II

### FALSE ADVERTISING OF THE HUMAN GROWTH COMMPELX PRODUCT IN VIOLATION OF SECTION 43(A)(1)(B) OF THE LANHAM ACT

117.   Hi-Tech incorporates Paragraphs 1 though 16 and 71 though 108 as if fully set forth herein.

118.   As set forth herein, Defendants, who purport to sell "dietary supplements," have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of their Human Growth Complex product by falsely and misleadingly representing that the Beast product is a legal, homeopathic dietary supplement, the consumption of which leads to changes in body mass and strength.  Defendants also falsely and misleadingly fail to disclose that the Human Growth Complex product is not legal, not homeopathic, and that is not a dietary supplement despite its marketing and sale though dietary supplement retailers.

119.   Defendants' marketing of such misbranded and falsely-labeled substances has the tendency to deceive a substantial segment of the public into

believing that they are purchasing a product with different characteristics than it has. More specifically, Defendants' marketing and sale of the Human Growth Complex product has the tendency to deceive a substantial portion of the population into believing that they are purchasing a legal, homeopathic dietary supplement, the consumption of which leads to changes in body mass and strength, as opposed to an illegal, non-homeopathic drug, the consumption of which could not affect body mass and strength.

120. The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer has concerns about the consequences of ingesting illegal, non-homeopathic, un-FDA approved, prescription-only drugs.

121. Defendants have introduced their false and misleading statements and representations into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce. The Defendants' product also bears a label containing the false statement that the Human Growth Complex product has a "Homeopathic Formula," rendering the Human Growth Complex product misbranded under the law.

122. Defendants' actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in

commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of the products in violation of Section 43(a)(1)(B) of the Lanham Act.

123.   Hi-Tech's muscle and body building products are legitimate dietary supplements, which compete directly with Defendants' Human Growth Complex product.

124.   As a result of Defendants' misrepresentations, Hi-Tech has suffered an ascertainable economic loss of money by the diversion of business from Hi-Tech to Defendants.

## COUNT III

## VIOLATION OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT, O.C.G.A. §10-1-372 (a)

125.   Hi-Tech incorporates Paragraphs 1 though 124 as if fully set forth herein.

126.   Hi-Tech and Defendants are commercial competitors. Defendants' actions as described above constitute deceptive and unfair trade practices in violation of O.C.G.A. §10-1-372 (a).

127.   The Georgia Deceptive and Unfair Trade Practices Act was enacted to protect the public and legitimate business enterprises from those who engage in unfair methods of competition and unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

27

128.  Defendants' actions, as alleged herein, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, and/or misrepresentation in violation of O.C.G.A. §10-1-372 (a).

129.  Defendants' engage in deceptive, unfair, and fraudulent misrepresentations as alleged herein. Consumers were certain to be deceived because Defendants' knowingly failed to disclose the source, characteristics, ingredients, standards and/or quality of their Beast and Human Growth Complex products, while making false and misleading representations as set forth herein. Defendants' business practices, in the advertising, marketing, packaging, labeling, and sale of their Beast and Human Growth Complex products as unique and superior products causes selection of said products over alternative dietary supplements, such as those of Hi-Tech.

130.  As a direct and proximate result of Defendants' unlawful acts and omissions, Hi-Tech has suffered an ascertainable loss of money or property in the form of diverted or lost sales.

131.  Hi-Tech is without remedy at law and Defendants' deceptive trade practices as set forth herein continue, and will continue, unless enjoined by this Court.

132.   Hi-Tech is therefore entitled to compensatory and punitive damages, equitable and injunctive relief, costs, and reasonable attorney fees.

## COUNT IV

### COMMON LAW UNFAIR COMPETITION

133.   Hi-Tech incorporates Paragraphs 1 though 132 as if fully set forth herein.

134.   Defendants' actions, as set forth above, constitute unfair competition in violation of the common law of the State of Georgia.

135.   Defendants' actions as described herein have caused and will continue to cause irreparable injury to Hi-Tech and, unless restrained, will continue to do so.

136.   As a direct and proximate result of Defendants' conduct, Hi-Tech has suffered damages in an amount to be determined at trial.

137.   Defendants' actions entitle Hi-Tech to compensatory and punitive damages in an amount to be determined at trial.

138.   Defendants' actions are such as to constitute that level of wantonness and lack of care to justify punitive damages under Georgia law.

139.   Hi-Tech is without remedy at law and Defendants' deceptive and anti-competitive trade practices as set forth herein continue, and will continue, unless enjoined by this Court.

140.   Hi-Tech is therefore entitled to compensatory damages, punitive damages, equitable and injunctive relief, costs, and reasonable attorney fees.

## COUNT V

### GEORGIA RICO CLAIM
### VIOLATION OF O.C.G.A. § 16-14-4(a)

141.   Hi-Tech incorporates by reference Paragraphs 1 through 140 above as though fully set forth herein.

142.   USA Nutraceuticals is a "person" within the meaning of the Georgia RICO Law.  O.C.G.A. § 16-14-1, et seq.

143.   Ultra-Lab is a "person" within the meaning of the Georgia RICO Law. O.C.G.A. § 16-14-1, et seq.

144.   John Doe Entities 1-10 are "persons" within the meaning of the Georgia RICO law.  O.C.G.A. § 16-14-1, et seq.

145.   John Does 1-10 are "persons" within the meaning of the Georgia RICO law.  O.C.G.A. § 16-14-1, et seq.

146.   USA Nutraceuticals is an "enterprise" within the meaning of the Georgia RICO Law.  O.C.G.A. § 16-14-3(6).

147.   Ultra-Lab is an "enterprise" within the meaning of the Georgia RICO Law.  O.C.G.A. § 16-14-3(6).

148.   John Doe Entities 1-10 are "enterprises" within the meaning of the Georgia RICO Law.  O.C.G.A. § 16-14-3(6).

149.   John Does 1-10 are employed by or associated with USA Nutraceuticals, Ultra-Lab, and/or John Doe Entities 1-10 within the meaning of the Georgia RICO Law.  O.C.G.A. §16-14-4(b).

150.   In committing the acts described above, the Defendants, and their officers, agents, and employees repeatedly acted in furtherance of an unlawful scheme and endeavor, that was continuously executed by them since at least 2002 through the current date.

151.   From on or about a date unknown but since at least 2002 and continuing through the current date, the Defendants herein did knowingly and willfully devise and intend to devise a scheme to intentionally defraud Hi-Tech out of sales and profits though the false and misleading marketing and sale of the Beast and Human Growth Complex products to consumers across the United States, and to enable consumers to purchase their Beast and/or Human Growth Complex product online, thereby diverting profits and sales from Hi-Tech.

152.   From on or about a date unknown but since at least 2002 and continuing through the current date, the Defendants herein did knowingly and willfully devise and intend to devise a scheme to intentionally defraud Hi-Tech out of sales and

31

profits though their false and/or misleading product claims regarding the content, quality, characteristics, and/or ingredients of their Beast and/or Human Growth Complex product, thereby diverting sales and profits from Hi-Tech.

153.   In committing the acts described above, Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly acted in furtherance of the unlawful scheme through a pattern of racketeering activity.

154.   Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly caused letters, and other matters and things to be deposited with and delivered by the United States Postal Service and/or interstate couriers to each other and others in repeated violation, or attempted violation, of 18 U.S.C. § 1341 (mail fraud).  Defendants specifically used the United States Postal Service and/or interstate couriers to ship the Beast and Human Growth Complex products, the labels of which bore the false and misleading representation that the product is homeopathic, to purchasing consumers throughout the United States.

155.   To the extent that any of the Defendants did not participate directly in these acts of mail fraud, they knowingly and willfully caused, aided, abetted, advised, encouraged, hired, counseled, commanded, induced or procured another to

commit these violations of 18 U.S.C. §§ 1341 & 2 and in violation of O.C.G.A. § 16-2-20.

156. Defendants, and their officers, agents, and employees, could reasonably foresee the uses of the United States Postal Service and interstate couriers in connection with the execution of these unlawful schemes. All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint. In this regard, the Defendants, to include the individual defendants and corporations, have purposely directed tortious and fraudulent conduct toward the State of Georgia and Hi-Tech.

157. Each of these "mailings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. §§ 16-14-3(4)(A) and (5)(C).

158. In furtherance of these unlawful schemes, and for the purpose of executing, and attempting to execute these schemes, Defendants and their officers, agents, and employees, repeatedly utilized the internet and email communications, in repeated violation, or attempted violation, of 18 U.S.C. § 1343 (wire fraud). Defendants specifically used the internet and email communication to electronically disseminate their Beast and Human Growth Complex products and to enable the online purchase of said products by consumers throughout the United States.

33

Defendants also used the internet to disseminate their false and misleading representations concerning the Beast Human Growth Complex products. Specifically, as set forth herein, Defendants used the internet to falsely and misleadingly represent that the Beast and Human Growth Complex products are legal, homeopathic dietary supplements, which affects body mass and strength when, in fact, the Beast and Human Growth Complex products are illegal, non-homeopathic drug, which could not possibly affect body mass and strength.

159.   To the extent that any of the Defendants did not participate directly in these acts of wire fraud, they knowingly and willfully caused, aided, abetted, advised, encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. §§ 1343 & 2 and in violation of O.C.G.A. § 16-2-20.

160.   Each of the Defendants and their officers, agents, and employees, could reasonably foresee the uses of the interstate wire communications in connection with the execution of these unlawful schemes.  All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint.   In this regard, the Defendants, to include the individual defendants and corporations, have purposely directed tortuous and fraudulent conduct toward the State of Georgia and Hi-Tech.

34

161.   Each of these "interstate wirings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. § 16-14-3(4)(A) and 5(C).

162.   Each of these acts of racketeering activity was authorized, requested, commanded, performed, or recklessly tolerated by John Does 1-10, and was done in furtherance of the execution of the unlawful scheme designed to to defraud Hi-Tech out of sales and profits.

163.   The multiple acts of racketeering activity by the Defendants and their officers, agents, and employees were interrelated, were and are part of a common and continuous pattern of racketeering activity to include fraudulent acts and schemes, which were and are acts perpetrated for the same or similar purposes, and were and are not a series of disconnected, isolated or sporadic acts.  These acts were and are part of the regular and routine way the Defendants conduct their business. The multiple racketeering acts by the Defendants and their officers, agents, and employees constitute a "pattern of racketeering activity" as defined in O.C.G.A. § 16-14-3(4)(A) and (5).

164.   By reason of the foregoing, the Defendants, and their officers, agents, and employees, directly and indirectly, acquired or maintained control of property,

i.e. profits diverted from Hi-Tech, through a pattern of racketeering activity in violation of the Georgia RICO Act (O.C.G.A. § 16-14-4(a)).

165.   As a direct and proximate result of these violations of O.C.G.A. §16-14-4(a) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## COUNT VI

### GEORGIA RICO CLAIM
### VIOLATION OF O.C.G.A. § 16-14-4(b)

166.   Hi-Tech incorporates by reference Paragraphs 1 through 165 above as though fully set forth herein.

167.   By reason of the foregoing, the Defendants and their managerial officials, agents, and employees, have unlawfully, knowingly and willfully conducted and participated in, directly or indirectly, the affairs of USA Nutraceuticals, Ultra-Lab, and John Doe Entities 1-10 through a pattern of racketeering activity in violation or attempted violation of O.C.G.A. § 16-14-4(b).

168.   As a direct and proximate result of these violations of O.C.G.A. §16-14-4(b) by Defendants, and their managerial officials, agents, and employees, Hi-Tech been injured and damaged as set forth herein.

36

## COUNT VII

### GEORGIA RICO CLAIM
### VIOLATION OF O.C.G.A. § 16-14-4(c)

169.   Hi-Tech incorporates by reference Paragraphs 1 through 168 above as though fully set forth herein.

170.   By reason of the foregoing circumstances and events, Defendants individually and collectively knowingly and willfully, combined, colluded, conspired, attempted, endeavored, and continue to combine, collude, conspire, and endeavor, to violate the provisions of O.C.G.A. §16-14-4(a) and (b), in violation of O.C.G.A. §16-14-4(c).

171.   Defendants committed overt acts and preparatory acts to effect the objects of the conspiracy or endeavor as specified in all of the paragraphs preceding this Count.   Each of these racketeering acts is an overt or prepatory act of the conspiracy.   O.C.G.A. § 16-14-3(5).

172.   As a direct and proximate result of these violations of O.C.G.A. § 16-14-4(c) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Hi-Tech prays for relief as follows:

1.      That Defendants be adjudged to have violated 15 U.S.C. §1125(a) by unfairly competing against Hi-Tech by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of the Beast and Human Growth Complex products;

2.      That such damages and profits be trebled and awarded to Hi-Tech as a result of Defendants' willful, intentional and deliberate acts in violation of the Lanham Act;

3.      That Hi-Tech recover actual damages, treble damages, costs, and attorney fees for Defendants' violation of Georgia RICO statute;

4.      That all of Defendants misleading and deceptive materials and products be destroyed as permitted under 15 U.S.C. § 1118;

5.      That Defendants be adjudged to have unlawfully and unfairly competed against Hi-Tech under the laws of the State of Georgia, including O.C.G.A. §10-1-372(a);

6.      That Hi-Tech be awarded Punitive Damages pursuant to both Georgia and federal law; and

7.      That Hi-Tech be awarded such other relief as this Court may deem just and proper.

38

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable law, Hi-Tech requests a trial by jury on all issues so triable.

This 7th day of April, 2016.

Respectfully submitted,

*/s/ Arthur W. Leach*
Arthur W. Leach
Georgia Bar No. 442025
C.L. Parker
Georgia Bar No. 722011

The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
Tel: 404-786-6443
Fax: 678-624-9852
 Art@ArthurWLeach.com
CL@clparkerllc.com

*/s/ Edmund J. Novotny*
Edmund J. Novotny, Jr.
Georgia Bar No. 547338

101 Marietta Street
Suite 3100
Atlanta, Georgia 30303
Tel: 404-979-3150
Ednovotny@dcbflegal.com

*Counsel for Plaintiff Hi-Tech*
*Pharmaceuticals, Inc.*

39